IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTWON D. JENKINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 20-CV-233-SMY |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Petitioner Antwon D. Jenkins was sentenced to 293 month's imprisonment for one count of kidnapping. He moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Docs. 1, 2).[1] The Government opposes the Petition (Docs. 29, 54). For the following reasons, the Petition is **DENIED**.

## Procedural and Factual Background

### Pretrial Proceedings

Jenkins was arrested for Kidnapping and Using or Carrying a Firearm to Commit a Federal Crime of Violence on July 23, 2012. *United States of America v. Antwon D. Jenkins*, 12-CR-30239-SMY-1 (Doc. 12) (S.D. Ill. Jul. 27, 2012). Assistant Federal Public Defender Todd Schultz entered his appearance for Jenkins. (*Id.*, Docs. 7, 10). While in pretrial custody, Jenkins told an FBI agent that he "takes responsibility for everything" (Doc. 1, p. 20).

Jenkins and Schultz met with the Government for two proffer interviews in August 2012. *United States of America v. Antwon D. Jenkins*, 12-CR-30239-SMY-1 (Doc. 171, pp. 1-2) (S.D.

---

[1] Jenkins supplemented his Petition several times (Docs. 5, 11, 38, 49) and also replied to the Government's response (Doc. 30).

Ill. Feb. 17, 2014). Before the interviews, Jenkins and the Government executed a "Proffer Letter Agreement" which provided in relevant part:

> No statements or information provided by [Jenkins] during the 'off-the-record' proffer or discussion will be used against [Jenkins] in any criminal case during the government's case in chief. That is, however, the only limitation on the use the government may make of [Jenkin's] statements….The Government may make derivative use of information revealed during the proffer." (*Id.*, Doc. 171-2).

The Government reserved the right to use Jenkins' statements against him if he testifies "contrary to the substance of his proffer statement, or through any manner whatsoever [at trial]" *Id.*

Jenkins gave a "full confession" during the proffer interviews (Doc. 1, p. 21). On August 21, 2012, he was indicted for kidnapping (Count 1) and using or carrying a firearm to commit a federal crime of violence (Count 2). (*Id.*, Doc. 15). Attorney Schultz eventually filed a motion to withdraw as Jenkins' counsel (*Id.*, Doc. 55). Attorney Neal Connors was subsequently appointed and represented Jenkins at trial. (*Id.*, Doc. 104).

Prior to trial, the Government filed a Notice of Intent to use Proffer Statements. (*Id.*, Doc. 169). In response, Jenkins moved to quash the Indictment on the basis the Government had utilized information and statements from his proffer interviews before the grand jury. (*Id.*, Doc. 171). The Court denied the motion to quash, finding the proffer agreement did not apply to grand jury proceedings based on its plain language and the Government had demonstrated that the information provided to the grand jury was obtained through independent sources. (*Id.*, Doc. 175 at pp. 5-6).

Jenkins also moved to suppress the firearm used in the charged offense, arguing that it was discovered based on information he provided during the proffers. (*Id.*, Doc. 190). The Court denied the motion to suppress, referring to its previous Order denying the motion to quash wherein the Court alternatively noted that "the investigators derivatively used information Jenkins provided

to pursue investigatory leads [and had not violated the proffer]." (*Id.*, Doc. 193 at p. 2). Jenkins also argued that the East St. Louis Police Department was corrupt. In that regard, there was no "evidence . . . to suggest that a part of the investigation was tainted or is suspect." (*Id.*, Doc. 193 at p. 6).

## **The Trial**

At trial, the evidence against Jenkins was overwhelming, even without information or statements from his proffer interview. (*Id.*, Docs. 199, 200, 202, 203). The Government's case in chief began with a corporal in the Missouri State Highway Patrol who was patrolling on Interstate 44 in Franklin County (*Id.*, Doc. 244 at p. 11). He encountered an individual by the side of the road who was later identified as A.H., the victim. (*Id.*, Doc. 244 at p. 17).

The Government called A.H., who testified that Jenkins had lived on his street (*Id.*, Doc. 244 at p. 59). He positively identified Jenkins in the courtroom (*Id.*, Doc. 244 at p. 61). A.H. learned that Jenkins' house had been burglarized in Cahokia (*Id.*, Doc. 244 at p. 63). A few days later, A.H. went to Jenkins' house (*Id.*, Doc. 244 at pp. 65-66). Jenkins asked A.H. if he knew anything about the burglary; A.H. denied (*Id.*, Doc. 244 at p. 67). Jenkins asked A.H. to sell marijuana, and A.H. agreed to pick it up at 721 Alhambra Court in East St. Louis (*Id.*, Doc. 244 at pp. 68-70).

A.H. and Jenkins went inside the Alhambra Court residence and after some time, Jenkins grabbed a gun (*Id.*, Doc. 244 at pp. 77-78). Others arrived and assaulted A.H. with a broomstick, chair, plastic chair, and belts (*Id.*, Doc. 244 at p. 81). At one point, Jenkins put a firework in A.H.'s mouth (*Id.*, Doc. 244 at p. 82). Jenkins directed the group to take A.H. to a back room, where Jenkins poured gasoline on A.H. (*Id.*, Doc. 244 at pp. 83-85). Jenkins indicated they were going to take a ride and got in his truck to drive (*Id.*, Doc. 244 at pp. 88-91). Jenkins' co-defendants

dragged A.H. into the truck and they drove into Missouri (*Id.*, Doc. 244 at pp. 92-96). The parties do not dispute that the layout of the truck meant that A.H. was confined and could not voluntarily leave. At one point, Jenkins' co-defendants opened the door and ordered A.H. to exit the truck so they could shoot him, but A.H. ran away (*Id.*, Doc. 244 at p. 95).

The Government called Minnie Gray, A.H.'s grandmother, who received a call that A.H. had been hospitalized (*Id.*, Doc. 244 at pp. 116-117). When she arrived in A.H.'s hospital room, he said that Jenkins had assaulted and driven him from Illinois to Missouri, and his grandmother immediately contacted the East St. Louis Police Department (*Id.*, Doc. 244 at p. 119). The grandmother also contacted an officer who worked with the FBI (*Id.*, Doc. 244 at p. 120).

The Government called Quavondris Graves, Jenkins' co-defendant (*Id.*, Doc. 245 at p. 2). Mr. Graves had pleaded guilty to aiding and abetting kidnapping and had agreed to testify against Jenkins (*Id.*, Doc. 245 at p. 4). Mr. Graves positively identified Jenkins (*Id.*, Doc. 245 at p. 8). On the day of the incident, Mr. Graves witnessed Jenkins hit A.H., put a stick of dynamite in his mouth, and pour gasoline on him (*Id.*, Doc. 245 at pp. 19-20). Jenkins repeatedly asked A.H. about the location of Jenkins' money (*Id.*, Doc. 245 at p. 22). Eventually, they got in the truck and Jenkins drove from Illinois to Missouri (*Id.*, Doc. 245 at pp. 27-28). Jenkins stopped the car and Mr. Graves let A.H. out of the truck (*Id.*, Doc. 245 at p. 32). On redirect examination, Mr. Graves admitted that A.H. had no choice about whether to get into the truck (*Id.*, Doc. 245 at p. 48).

The remainder of the Government's case-in-chief consisted of investigators, police, and forensic evidence that corroborated the testimonial evidence. The Government called a trooper with the Illinois State police who had executed a search warrant at the Alhambra Court residence and found a number of items that corroborated the testimonial evidence, including the red plastic gasoline can and a broken white plastic chair (*Id.*, Doc. 278 at pp. 35-37). He swabbed a blood

stain on a chair for testing (*Id.*, Doc. 278 at pp. 69-71). The Government called a forensic scientist who found the DNA markings of A.H. from this blood stain (*Id.*, Doc. 279 at pp. 2, 28-30). The Government called several FBI agents and a police officer who had searched or been present at Jenkins' other residence in Cahokia, Illinois (*Id.*, Doc. 279 at pp. 52-53). They located the gun in the purse of Jenkins' girlfriend, who had consented to its search (*Id.*, Doc. 279 at pp. 55-56).

After the Government rested its case in chief, the defense made an unsuccessful Rule 29 motion for judgment of acquittal but did not call any witnesses and rested (*Id.*, Doc. 279 at pp. 87-88, 90). Jenkins indicated that he did not wish to testify (*Id.*, Doc. 279 at p. 89).

At closing, the Government only had to prove that Jenkins had performed one of the actions listed in the instruction – "willfully seized, confined, inveigled, kidnapped, or carried away [A.H.]" (*Id.*, Doc. 285 at pp. 14-15). The Government argued, "Judge Herndon has instructed you that to inveigle means to lure or entice or lead the person to do something by making false representations or promises or using other deceitful means" (*Id.*, Doc. 285 at p. 15). Jenkins had lured A.H. to the residence with promises of selling marijuana (*Id.*, Doc. 285 at p. 16). Alternatively, Jenkins had confined or kidnapped A.H. (*Id.*, Doc. 285 at pp. 16-17). Jenkins' attorney countered that this was not a federal kidnapping case. When A.H. entered the truck, it was a "ride that actually ended the violence that was visited upon [A.H.] in the house" (*Id.*, Doc. 285 at p. 33). Jenkin's attorney pointed to inconsistencies in testimony about how A.H. had ended up in the truck (*Id.*, Doc. 285 at p. 32).

The jury was instructed that, to find Jenkins guilty of kidnapping, the Government had to prove the following beyond a reasonable doubt: that (1) Jenkins "knowingly and willfully seized, confined, inveigled, kidnapped, abducted, or carried away" A.H.; that (2) Jenkins "held [A.H.] for ransom, reward, or otherwise;" and that (3) A.H. "was willfully transported in interstate commerce

while so seized, confined, inveigled, kidnapped, abducted, or carried away" (*Id.*, Doc. 201-2, p. 18). The verdict form simply stated that the jury could find Jenkins guilty or not guilty of "kidnapping or aiding and abetting kidnapping as charged in Count 1" (*Id.*, Doc. 207, p. 1).

Following deliberations, the jury found Jenkins guilty on both counts of the indictment. (*Id.*, Docs. 203, 207). He was sentenced to a total term of imprisonment of 308 months, which consisted of 188 months on the kidnapping charge and 120 months on the using or carrying a firearm to commit a federal crime of violence. (*Id.*, Docs. 258, 261).

## Appeal and Subsequent Proceedings

Jenkins filed a notice of appeal on August 22, 2014. (*Id.*, Doc. 263). CJA Attorney Neal Connors was terminated from the case based upon Jenkins' complaints at the completion of the sentencing hearing. (*Id.*, Doc. 276 at p. 92). CJA Attorney Curtis Blood was appointed to represent Jenkins on appeal. (*Id.*, Doc. 264). Attorney Blood presented one argument on appeal: "Did the government breach the proffer agreement to not use statements or information provided by defendant in its case in chief against defendant, when its agents testified that they went to [Jenkins'] house and searched for the gun and found it, and then the government offered the gun as evidence? If so, does the violation require a new trial?" *United States of America v. Antwon D. Jenkins*, No. 14-2898 (Doc. 32 at p. 7) (7th Cir. Jan. 12, 2015). Aside from this issue, Attorney Blood reiterated that this violation may have influenced the verdict because Jenkins had committed many crimes but not necessarily kidnapping. (*Id.*, Doc. 32 at p. 24). Attorney Blood submitted a supplemental brief that kidnapping was not a "crime of violence" as defined by 18 U.S.C. § 924(c)(3)(A), and that the latter was unconstitutionally vague. (*Id.*, Doc. 62 at pp. 5-10).

The Seventh Circuit Court of Appeals reversed Jenkins' conviction under 18 U.S.C. § 924(c) only and remanded the matter for resentencing. *United States v. Jenkins*, 849 F.3d 390 (7th

Cir. 2017). The Seventh Circuit held that under *Johnson v. United States,* 576 U.S. 591 (2015), § 924(c) was unconstitutionally vague. As kidnapping is not a crime of violence, Jenkins could not be sentenced under the Armed Career Criminal Act. *Id.* The Government appealed the ruling of the Seventh Circuit Court of Appeals to the United States Supreme Court. On May 14, 2018, the Supreme Court vacated the Seventh Circuit's decision and remanded the case for further consideration in light of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *United States v. Jenkins*, 138 S. Ct. 1980 (2018). *United States of America v. Antwon D. Jenkins*, No. 14-2898 (Doc. 82) (7th Cir. May 14, 2018). Ultimately, on remand, the Seventh Circuit vacated Jenkins' conviction for using or carrying a firearm to commit a federal crime of violence and remanded the case for resentencing. *United States v. Jenkins*, 932 F.3d 556, 558 (7th Cir. 2019). The Seventh Circuit also directed that the organizer or supervisor adjustment under U.S.S.G. §3B1.1 should not be considered during resentencing. *Id.*

On May 9, 2017, the Court appointed Attorney Eugene Howard to represent Jenkins in his resentencing hearing. *United States of America v. Antwon D. Jenkins*, 12-CR-30239-SMY-1 (Doc. 322) (S.D. Ill. May 9, 2017). In the PSR, Probation calculated Jenkins' advisory guideline range of 235-293 months based upon an adjusted offense level 36 and criminal history category III. (*Id.*, Doc. 396 at ¶ 94). The criminal history of III was partially based on his 2015 conviction for possession with intent to distribute cocaine. (*Id.*, Doc. 396 at ¶ 60). On January 28, 2020, this Court held a resentencing hearing at which Attorney Howard asked the Court to "consider [Jenkins'] post sentencing conduct in mitigation" (*Id.*, Doc. 455 at 19:4-25). Nevertheless, this Court resentenced Jenkins to a term of imprisonment of 293 months, to run consecutively with his sentence in 13-cr-30125-DRH. (*Id.*, Docs. 402, 406). This term of imprisonment was within the guidelines range. (*Id.*, Doc. 455 at p. 26).

Jenkins attached post-sentencing correspondence between himself and Attorney Howard. Attorney Howard indicated that they had a "post-sentencing conference at the Courthouse" and that, "[Jenkins] advised me that [he] likely would not appeal the 293-month sentence Judge Yandle imposed . . . in light of the appellate standard of review. Therefore, I will not file a Notice of Appeal, unless I hear differently from you before February 10, 2019" (Doc. 11, p. 27). Jenkins did not appeal his sentence. Instead, Jenkins filed a motion to copy, which included a § 2255 motion (*Id.*, Doc. 408). That motion is this civil case, 3:20-cv-00233-SMY (Doc. 1).

## Discussion

The Court must deny a § 2255 motion unless it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Collateral relief is appropriate if error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997). Three issues cannot be raised in a § 2255 motion: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal. *United States v. Belford*, 975 F.2d 310, 313 (7th Cir. 1992).

Ineffective assistance of counsel claims, however, may be raised under § 2255 regardless of whether the petitioner could have raised the claim on direct appeal and are analyzed under the standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Massaro v. United States*, 538 U.S. 500, 504-505 (2003). "The benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.  To prevail, the petitioner must prove: (1) that the attorney's performance fell below an objective standard of reasonableness; *and* (2) that the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell*, 497 F.3d at 761.  "Failure to satisfy either prong is fatal to [a] claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

With respect to the performance prong, it is presumed that counsel has rendered adequate assistance and has made significant decisions in the exercise of reasonable professional judgment. *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004).  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006), *quoting Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). The prejudice prong requires establishing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004); *see also Williams v. Taylor*, 529 U.S. 362, 363 (2000).

It is hard to conceive of an argument, objection, or strategy that could have resulted in Jenkins' acquittal. *Benefiel*, 357 F.3d at 661 (7th Cir. 2004). Nevertheless, this Court analyzes Jenkins' claims.[2]

### Proffer Agreement and Pretrial Proceedings

Jenkins raises claims related to his proffer agreement: (1) Jenkins' attorney Schultz was ineffective by allegedly deceiving Jenkins into entering into the proffer agreement (Doc. 1, p. 18);

---

[2] The district court may deny an evidentiary hearing if, as here, the motion, files, and records of the case conclusively show that Jenkins is not entitled to relief. *United States v. Kovic*, 830 F.2d 680, 692 (7th Cir. 1987).

(2) Jenkins' trial attorney, Connors, did not adequately represent him by failing to move to quash the indictment because he was indicted based on statements in his proffer agreement (Doc. 1, p. 34); (3) Connors should have objected to the Government's "proffered evidence" at trial, like a picture of the gun that was introduced during Graves' testimony, and failing to move for a new trial (Doc. 1, pp. 50-54; Doc. 49, p. 13); and (4) Jenkins' first appellate counsel, Blood, should have raised the Government's breach of the proffer agreement on appeal (Doc. 1, p. 54).

Even assuming that Jenkins misunderstood his rights when he entered into the proffer agreement, Jenkins has not demonstrated that this affected the outcome. *Benefiel*, 357 F.3d at 661 (7th Cir. 2004). Before entering into the proffer agreement, Jenkins had already confessed to the kidnapping (Doc. 1, p. 20). The Proffer Agreement was an attempt to obtain a sentencing reduction based on an acceptance of responsibility (Doc. 1, p. 22). *United States v. Godwin,* 202 F.3d 969, 973 (7th Cir. 2000) ("[i]t was reasonable, in the face of the evidence against [Defendant] . . . , for [his counsel] to decide to cooperate with the government from the get-go"). This Court will not dispute the professional judgment of Attorney Shultz in advising Jenkins to execute the proffer agreement, given the breadth of evidence against Jenkins. *Id.* (advising cooperation that would have earned a three-level reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1(b), was "well within the range of normal strategic choice"). Any alleged promises by Attorney Shultz, or the Government, to reduce the charges to assault are unavailing as well. *Bischel v. United States,* 32 F.3d 259, 263-265 (7th Cir. 1994) (allegations of an "understanding" or "promise" without documentation is insufficient for habeas relief).

The proffer did not apply to grand jury proceedings or trial: the Government was entitled to use derivative information to prosecute their case, as long as it was not used in their case in chief. The Government called its own witnesses, instead of introducing any of Jenkins' statements.

In denying a similar motion to quash the indictment, the Court found that the "information provided to the grand jury was obtained through independent sources" *United States of America v. Antwon D. Jenkins*, 12-CR-30239-SMY-1 (Doc. 175 at p. 4) (S.D. Ill. Feb. 26, 2014). Accordingly, none of Jenkins' attorneys were ineffective for failing to argue that the Government had violated the proffer. And although Jenkins asserts that the proffer agreement altered his defense at trial, he does not produce evidence that he entered the proffer "unknowingly and unwillingly," merely that it was disadvantageous because he could not rebut any testimony. *United States v. Smith*, 770 F.3d 628, 639-640 (7th Cir. 2014).

Jenkins cites cases that indicate that he mistakenly believes that the proffer agreement conferred immunity. Jenkins' emphasis on *United States v. Palumbo*, 897 F.2d 245 (7th Cir. 1990) is misplaced as that involved a different agreement involving "informal use and derivative use immunity." For similar reasons, Jenkins' repeated citation to *Kastigar v. United States*, 406 U.S. 441 (1972) is mistaken, as that case involves the prosecution of a witness who made inculpatory statements while under a grant of immunity. As such, *Kastigar* could only apply to Jenkins' co-defendants, an argument that Jenkins has no standing to enforce. *Rakas v. Illinois*, 439 U.S. 128, 132-133 (1978) (describing standing as not met in the context of asserting a third party's right to be free of unreasonable searches and seizures). Lastly, Jenkins' citation to *Lee v. United States*, 137 S.Ct. 1958 (2017) inapplicably involves immigration consequences.

### **Performance at Trial**

Jenkins challenges the performance of his trial attorney: (1) Connors failed to object to the jury instruction on inveiglement (Doc. 49, p. 1); (2) Connors failed to adequately present a defense against the government's kidnapping theory and any inveiglement (Doc. 49, pp. 2-5); (3) Connors failed to challenge the Government's failure to prove that the victim was held outside of the

transportation in this case (Doc. 49, p. 7); (4) he was convicted with a general verdict form (Doc. 1, p. 85; Doc. 49, p. 8); and (5) Connors failed to file a post-trial motion for a new trial (Doc. 1, p. 54).

Under the Federal Kidnapping Act, the Government had to prove that: (1) Jenkins knowingly and acting contrary to law, kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away any person; and (2) held the person for ransom, reward, "or otherwise" (to include any purpose or benefit); and; (3) (i) the person was willfully transported in interstate or foreign commerce; or (ii) the offender traveled in interstate or foreign commerce; or (iii) the offender uses the mail or any means, facility, or instrumentality of interstate of foreign commerce in committing or in furtherance of the commission of the offense. 18 U.S.C. § 1201. The Act was amended with the "or otherwise" language to extend federal jurisdiction over kidnappings for "any other reason," not only ransom and reward. *Gooch v. United States,* 297 U.S. 124, 128 (1936). Based on the evidence at trial, Jenkins and Mr. Graves may not have "inveigled" A.H. as Jenkins argues (Doc. 49, pp. 1-3), but they "confined" or "carried [him] away" across state lines to obtain Jenkins' allegedly stolen money. The jury instruction for the definition of inveiglement was the Seventh Circuit pattern instruction (Doc. 54-1), and Attorney Connors did not need to object. *United States v. White,* 443 F.3d 582, 587 (7th Cir. 2006) (to succeed on such a claim, Defendant must show that the "instructions did not adequately state the law"). Likewise, the general verdict form was proper as the jury found Jenkins guilty of "kidnapping or aiding and abetting kidnapping" *United States of America v. Antwon D. Jenkins*, 12-CR-30239-SMY-1 (Doc. 207 at p. 1) (S.D. Ill. Mar. 13, 2014).

Attorney Connors' closing argument reasonably argued that federal kidnapping was not the appropriate charge, and he highlighted the inconsistencies among the co-defendants' testimony

in how A.H. had been transported. *Hartjes*, 456 F.3d at 790. Attorney Connors was not required to challenge the Government's alleged failure to prove both the elements of holding for ransom, reward or otherwise and transportation in interstate commerce (Doc. 49, p. 8). *Cooper*, 378 F.3d at 641. Jenkins continually asked A.H. for the return of his money while driving him across state lines, which a jury could have found satisfied the requirement of holding a person for "ransom, reward, or otherwise." Congress had added the language of "or otherwise" to expand the range of the conduct that the statute reached. *Gooch v. United States,* 297 U.S. 124, 128 (1936).

Jenkins' insistence that his co-defendants received state sentences after being charged with state crimes (Doc. 1, p. 71) was not legally sound, as "under our federal system there can be simultaneous federal and State prosecutions where similar or identical offenses under the two systems of law are committed as the result of particular conduct on the part of a defendant." *United States v. DeMichael,* 692 F.2d 1059, 1062 (7th Cir. 1982). Attorney Connors did not need to raise *Government of Virgin Islands v. Barry*, 604 F.2d 221 (3rd Cir. 1979), which involves a conviction for "kidnapping for ransom, extortion, or robbery" under the state criminal code of the Virgin Islands and is inapplicable here.

With respect to Attorney Connors filing a motion for a new trial, Jenkins fails to specify a non-frivolous basis. The District Court repeatedly found that the Government did not breach the proffer agreement and denied a motion to suppress the firearm at trial. *Cooper*, 378 F.3d at 641. A motion pursuant to Federal Rule of Criminal Procedure 33 required a verdict "so contrary to the weight of the evidence that a new trial is required" or the "reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Chambers,* 642 F.3d 588, 592 (7th Cir. 2011); *United States v. Van Eyl,* 468 F.3d 428, 436 (7th Cir. 2006). Jenkins has demonstrated neither.

Finally, Jenkins disputes the sufficiency of the evidence, like the "trial testimony of the victim and Chassitee Scott support the conclusion that the victim traveled within the State of Illinois" or that the Government had misinterpreted evidence (Doc. 49, p. 4, 14). Even assuming that these arguments are not procedurally defaulted, Jenkins must show that the trial did not contain evidence from which a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Fozo,* 904 F.2d 1166, 1169 (7th Cir. 1990). Jenkins has not met this burden.

### **Appellate Counsel**

Jenkins raises issues with his appellate counsels: (1) Jenkins' initial appellate counsel, Blood, should have challenged the sufficiency of the evidence (Doc. 1, p. 57); (2) Jenkins' second appellate counsel, Howard, should have challenged his criminal history category and raised Jenkins' rehabilitation at sentencing (Doc. 11, pp. 5, 11-13); and (3) Attorney Howard should have appealed Jenkins' January 2020 sentence (Doc. 11, p. 1).

The first argument is not supported by the record. Attorney Blood argued that the evidence was insufficient without the Government's introduction of Jenkins' gun, which violated the proffer agreement. Attorney Blood included four jury notes that he suggested cast doubt on the verdict and devoted a section of the Appellant's Brief to arguing that "the evidence of guilt was not overwhelming." Attorney Blood also filed a supplemental brief that vacated one count, Jenkins' conviction for Using or Carrying a Firearm to Commit a Federal Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Attorney Blood's performance did not fall below an objective standard of reasonableness. *McDowell*, 497 F.3d at 761.

The second argument lacks merit because Jenkins was categorized as a level III offender due to a conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. §

841(a)(1). *United States of America v. Jenkins*, 13-cr-30125 (Doc. 449) (S.D. Ill. Mar. 18, 2015). Jenkins concedes that the conduct from his conviction for possession with intent to distribute cocaine stemmed from January 2012, predating the kidnapping by six months (Doc. 11, p. 10). Attorney Howard analyzed this issue for Jenkins and concluded that, "It appears your vacated sentence is void and re-sentencing will occur *de novo*. In that case, it appears that a 'prior sentence' under section 4A1.1(a) is any sentence imposed before re-sentencing" (Doc. 11, p. 20) (emphasis in original). Although Jenkins disagrees with Attorney Howard's analysis (Doc. 11, pp. 5-8), this Court finds that it was objectively reasonable. *McDowell*, 497 F.3d at 761. At resentencing, Attorney Howard raised the "self-rehabilitation" of Jenkins, as he describes it in his Petition (Doc. 11, pp. 14-17), but the Court rejected it in light of the severity of Jenkins' crime. In sum, Attorney Howard performed reasonably as counsel at the resentencing.

Jenkins' third argument fails because his within-guidelines sentence of 293 months is reviewed under an abuse-of-discretion standard and presumed reasonable. *Gall v. United States,* 128 S.Ct. 586, 591 (2007). There was little hope for a successful appeal and Attorney Howard confirmed, in writing, that Jenkins did not wish to do so (Doc. 11, pp. 27-28).

### Selective Enforcement and Corruption in East St. Louis

Jenkins asserts that he was selectively prosecuted by a corrupt East St. Louis police force and the "Save Our Streets" task force (Doc. 49, pp. 8-9). Jenkins alleges Orlando Ward, an East St. Louis officer who was indicted on drug charges, tainted Jenkins' convictions (Doc. 38, pp. 1-4). Jenkins cites no authority that selective enforcement for a federal crime provides habeas relief. *Belford*, 975 F.2d at 313. Factually, the Government never called Orlando Ward as a witness in Jenkins' trial, nor does any alleged relationship between Minnie Gray and Ward invalidate Jenkins' conviction (Doc. 38, p. 2). Jenkins was investigated and prosecuted based on the evidence

before the investigators and prosecutors, not because of any alleged corruption or conspiracy.

## Conclusion

Petitioner Antwon D. Jenkins' Motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 1) is **DENIED**. Any pending motions are **TERMINATED as MOOT**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336; *White v. United States*, 745 F.3d 834, 835 (7th Cir. 2014). Jenkins must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Jenkins has not made a substantial showing that his attorneys were ineffective. Nor has he demonstrated that reasonable jurists would disagree with the Court's analysis. Therefore, the Court declines to certify any issues for appeal.

**IT IS SO ORDERED.**

**DATED: January 19, 2024**

**STACI M. YANDLE**
**United States District Judge**